IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
DIRECTV, INC.                                          :
                                                       : CASE NO.  5:02 CV 0706
                          Plaintiff                    :
                                                       :
         -vs-                                          :
                                                       : MEMORANDUM OF OPINION AND
MATTHEW BLACKBURN, et al.                              : ORDER DENYING DEFENDANT JOHN
                                                       : TURK'S MOTION FOR RELIEF FROM
                          Defendants                   : JUDGMENT UNDER FED.R. CIV. P.
------------------------------------------------------ : 60(B)(6).

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This case involves a dispute between DIRECTV, Inc. and 23 defendants related to the unlawful acquisition and use of satellite services and devices.  The complaint alleges federal claims for unauthorized reception of satellite signals, unauthorized interception of electronic communications, possession of pirate access devices, and a state law claim for possession of an unauthorized device. (Docket #1).  On 14 February 2003, U.S. District Court Chief Judge John Matia entered default judgment in favor of DIRECTV and against defendant, John Turk, in the amount of $10,850.00, after Mr. Turk failed to answer or otherwise respond to the complaint. (Docket #116).  Mr. Turk immediately appealed the 14 February 2003 order to the United States Sixth Circuit Court of Appeals, which appeal was dismissed on 15 May 2003, for lack of jurisdiction, as parties and claims remained pending in the U.S. District Court. (Docket #157).  The

case proceeded until the matter was completely resolved on 23 January 2004. (Docket #171).

On 31 October 2005, Mr. Turk filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6). (Docket #172). DIRECTV opposed the motion (Docket #173) and Mr. Turk replied. (Docket #174). Both parties filed additional motions thereafter (Docket #175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, and 187)[1]. On 7 August 2006, this Court denied Mr. Turk's motion construing it as a Fed.R.Civ.P. 60(b)(1) motion that was untimely filed. (Docket #188). Mr. Turk appealed the 7 August 2006 order (Docket #190) and on 23 June 2008, the United States Sixth Circuit Court of Appeals reversed and remanded the matter. DirecTV, Inc. v. Turk, 282 Fed.Appx. 382 (6th Cir. 2008) (Docket #193 and 194). The Sixth Circuit's order mandates this Court to determine whether [Mr.] Turk was so incapacitated as to be unable to respond and whether Rule 60(b)(6) applies *** [and] whether the Rule 60(b)(6) motion was timely filed." Id.

## I. BACKGROUND FACTS

On 31 October 2005, Mr. Turk filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6). (Docket #172). In his motion, Mr. Turk states that he is entitled to relief because his mental and physical health are extraordinary circumstances justifying relief. Mr. Turk maintains that he was mentally incapacitated, which condition "prevented him from responding to [DIRECTV'S] motion for default." Id. Mr. Turk states

---

[1] These motions seek leave of the court to file additional briefing or attempt to strike additional briefing. The Court's 7 August 2006 order deemed these motions moot based on the resolution of the motion for relief from judgment. The Court will consider these motions on remand.

that he is functionally illiterate and has been mentally disabled, for Social Security purposes, since 1985. (Id.; Affidavit of John Turk, attached thereto). Mr. Turk states that his mental condition was aggravated by a physical assault on 14 November 2002, during which he was beaten unconscious and then treated in the hospital emergency room. (Turk Aff.) Mr. Turk states that, because of his previous condition and the assault, he was not "able to communicate with anyone concerning the DIRECTV matter until he received assistance in 2005." Id. DIRECTV argues that Mr. Turk's circumstances are not extraordinary and his motion was not made within a reasonable time. (Docket #173, Memorandum in Opposition). DIRECTV also argues that Mr. Turk has failed to demonstrate how his condition, as aggravated by the assault, prevented him from answering the complaint and/or engaging an attorney to handle the matter, as he did when he hired a lawyer to appeal the default judgment. Id.

## **II. ANALYSIS AND CONCLUSIONS OF LAW**

Mr. Turk has moved this Court for an order granting him relief from the default judgment pursuant to Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) is a catch-all provision that allows the court to set aside a judgment "for any other reason justifying relief from the operation of the judgment." Olle v. Henry & Wright Corp., 910 F.2d 357, 366 (6th Cir. 1990). Courts employ Rule 60(b)(6) only in "exceptional or extraordinary circumstances." Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989). In its remand order, the Sixth Circuit relied upon Pioneer Investment Services, Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394-95 (1993) and held that, "60(b)(6) applies *** only if [Mr.] Turk had actually been so incapacitated by his

3

mental illness that the ability to respond to the complaint had been beyond his control."[2] (Docket #193 at 7). "A motion under Rule 60(b)(6) must be filed 'within a reasonable time' after the judgment." Scotts Co. v. Central Garden & Pet Co., 403 F.3d 781, 792 (6th Cir. 2005), quoting Fed.R.Civ.P. 60(b)(6). If the Court determines that Mr. Turk has established exceptional or extraordinary circumstances, it must then consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default." United Coin Meter Co. v. Seaboard Coastline RR., 705 F.2d 839, 844-45 (6th Cir. 1983), quoting Farnese v. Bagnasco, 687 F.2d 761, 764 (3d. Cir. 1982)).

Pursuant to the Sixth Circuit mandate, we must initially determine: (1) whether Mr. Turk was so incapacitated at the time he was required to answer the complaint that he could not so answer, thereby relieving him from judgment under 60(b)(6); and (2) whether Mr. Turk's motion under 60(b)(6) was timely filed.

A.  Timeliness

The complaint was filed on 16 April 2002, but certified mail service was returned unexecuted and unclaimed on 3 October 2002. Although the complaint was posted on Mr. Turks' door on 16 July 2002 (Docket #45), neither the Federal Rules of Civil Procedure nor the Ohio Rules of Civil Procedure allow for service by this method. See Fed.R.Civ.P. 4(e) and 5(b);Ohio Civ.R. 4.6. A praecipe for ordinary mail service was filed on 9 October 2002, and return of service executed on 10 October 2002. (Docket

---

[2]Cf Fed.R.Civ.P. 60(b)(1), which requires a showing of "excusable neglect," which is akin to negligence. Id.

4

#89 and #90).[3] Thus, Mr. Turk was required to respond to the complaint by 30 October 2002. Mr. Turk did not make his first appearance in the case, until 13 March 2003, when his counsel appealed the default judgment entry (Docket #121). Mr. Turk filed his 60(b)(6) motion on 31 October 2005, 24 months after the answer date.

The bounds of reasonable time "ordinarily depend on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." Olle, 910 F.2d at 365. A party is minimally required to explain the delay. See Ohio Cas. Ins. Co. v. Pulliam, 182 F.3d 918 (Table), 1999 WL 455336, at *4 (6th Cir. 1999) (affirming denial of a 60(b)(6) motion because three year delay was unreasonable when the movant "failed to explain the lengthy delay"). See, also, Wilson-Simmons v. Compoli, 42 Fed.Appx. 754 (6th Cir. 2002) (holding that 28-month delay in filing 60(b)(5) motion was not reasonable when movant did not conduct sufficient due diligence prior to trial).[4]

Moreover, a party is not required to wait until all matters are resolved to file a motion for relief from judgment. Lal v. Prudential Securities, Inc., 172 F.3d 48 (Table), 1998 WL 889765, at *3 (6th Cir. 1998) (holding that 60(b)(6) was not filed within a reasonable time when party was aware of SEC proceedings in1994, and chose to wait to file his 60(b) claim for two years until his claim was settled under a settlement program entered into by Prudential). Here, Mr. Turk immediately appealed the default

---

[3] Fed.R.CIv.P. 4(e)(1) allows for service pursuant to state law, which provides for service by regular mail when certified mail is unclaimed. Ohio Civ.R. 4.6(e). A praecipe for regular mail service was issued on 4 June 2002, but certified mail service had not yet failed.

[4] The court noted that a 28-month delay was not reasonable for the reasons stated, but held that the movant's motion should have been filed under 60(b)(2), which has a one-year time requirement and it was, therefore, filed untimely under that provision.

judgment on 13 March 2003, rather than moving for relief from judgment under 60(b). Neither did Mr. Turk file his motion for relief from judgment after the Sixth Circuit dismissed his appeal on 15 May 2003. Mr. Turk was not obligated to wait until all claims were resolved against all parties in the underlying action to file his motion. See Lal, 172 F.3d at *3. A "decision to wait does not provide a reasonable explanation for [a] delay in filing a motion for relief from judgment." Id. While Mr. Turk has argued that he was incapacitated during this time period, he was represented by counsel who did not file a 60(b) motion.

However, "Rule 60(b)(6) is broadly drafted to give the trial judge discretion, without reference to the one-year limitation imposed elsewhere, to grant relief from judgment in unusual situations." Fuller v. Quire, 916 F.2d 358, 361 (6th Cir. 1990). In Fuller, the Sixth Circuit held that the district court did not abuse its discretion in granting relief "to avoid penalizing the plaintiff, "*** for the inexcusable misconduct of his attorney." Id. The district court stated its reason to be in the "'interest of justice,' after considering the broad equities of the case." Id. Considering the equities at issue here related to Mr. Turk's legal representation, and Mr. Turk's assertion that his pre-existing mental and physical condition was aggravated in November 2002, and continued through the time period in which the 60(b) motion could have been earliest filed, the facts of this case compel equitable relief on the issue of timeliness. See Olle, 910 F.2d at 365. Mr. Turk's motion was filed within a reasonable time under Fed.R.Civ.P. 60(b)(6).

6

B.  Capacity

Mr. Turk argues that his mental and physical condition left him unable to communicate regarding the DIRECTV matter.  Because "'relief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation[,]' the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence."  Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008), quoting Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir. 2001).  Thus, Mr. Turk has the burden of establishing by, clear and convincing evidence, that during the time-frame in which he had to respond to the complaint he lacked capacity to do so.

The Court will analyze each piece of evidence that Mr. Turk has provided to support his claim to determine if it clearly and convincingly establishes that Mr. Turk was incapacitated between 10 October 2002, and 30 October 2002.  In so doing, we will consider all evidence and argument related to this issue set forth in all of the pleadings filed by both parties.

1.  Affidavit of John Turk, dated 31 October 2005, attached to Mr. Turk's Motion for Relief from Judgment. (Docket #172).

In his first affidavit, Mr. Turk states that he is functionally illiterate, has been determined to be mentally disabled since 1985, by the Social Security Administration, and was physically assaulted and beaten unconscious, requiring emergency room treatment, on 14 November 2002.  Mr. Turk argues that, based on the foregoing, he was not able to "adequately communicate with anyone from on or about 2002, until on or about 2005, as he was totally disabled." Id.  Mr. Turk does not provide any

7

documentary evidence to support his claims.  Moreover, Mr. Turk was able to communicate with his attorney to appeal the default judgment during this time-frame.[5]  Mr. Turk also fails to cite any authority for the proposition that being functionally illiterate, and/or being mentally disabled for Social Security purposes, and/or being a victim of a physical attack that occurred several weeks after the time period in which was required to respond to the complaint, demonstrate a lack of capacity that prevented him from so responding.

> 2. Affidavit of Brigitte Williamson, dated 10 November 2005, attached to Mr. Turk's Reply. (Docket #174).

Ms. Williamson is Mr. Turk's sister.  Ms. Williamson's affidavit provides the following relevant information:

> a. Mr. Turk was severely beaten during a robbery in 1982, which "left him permanently mentally ill and suffering from post-traumatic stress syndrome."
>
> b. Mr. Turk was awarded SSD from Social Security.
>
> c. Mr. Turk has been unable to work since 1990, and was "reclusive, distrustful, very rarely socialized, and rarely answered the door or permitted visitors."
>
> d. Mr. Turk was the victim of violent crime in 2002, which caused him to have a "psychotic relapse, in which he became absolutely reclusive, *** nervous and anxious," and caused him to lose 120 pounds.
>
> e. Mr. Turk was easily overwhelmed, would not leave his house or answer the phone and "retreated into a child-like stance of denial regarding" DIRECTV's lawsuit.

---

[5]Mr. Turk's second affidavit and that of his sister Brigitte Williamson, discussed below, indicate that Mr. Turk asked his sister to contact his attorney to appeal the default judgment.  Regardless of how it was accomplished, Mr. Turk was able to communicate with his attorney and request that he take legal action on his behalf.

8

    f.      DIRECTV's default judgment caused Mr. Turk to become "paralyzed with fear of losing his home."

    g.      She contacted a lawyer for her brother because he was too devastated or fear-ridden.

    h.      She was told that the lawyer filed an appeal, but was not successful because Mr. Turk could not communicate to anyone because of his mental and physical condition.

    l.      Mr. Turk "developed another condition in the interim" that caused him to vomit several times per day, caused "shaky tremors in both hands" and "delayed speech and difficulty formulating thoughts."

    m.      Mr. Turk "is in absolute denial of all aspects of reality including but not limited to" DIRECT's lawsuit.

    n.      Mr. Turk was treated "for years" by Dr. Zorber.

    o.      Because of the 1982 beating, Mr. Turk broke off contact with his doctor and the outside world, did not take his medication, and "developed a complete and separate personality defined by anxiety, confusion, and distrust."

    p.      Despite her repeated requests, Mr. Turk refused to get medical attention until 2005.

    q.      Mr. Turk has been distrustful, unhappy, moody, and very anxious since 1982, and has a child-like dependence. After the 2002 beating, she saw Mr. Turk's 1982 behaviors reemerge.

It is clear that, from Ms. Williamson's perspective, Mr. Turk has suffered from serious medical and psychological problems, but her statements are not supported by any evidence, medical or otherwise. Further, most of Ms. Williamson's statements about her brother's condition do not contain dates. Those that do contain dates demonstrate that Mr. Turk's more serious symptoms "reemerged" as a result of the November 2002 assault, which took place several weeks after the answer date. As noted by Ms. Williamson, it was the default judgment that caused Mr. Turk to be

9

paralyzed with fear about losing his home, not the filing of the complaint itself. Ms. Williamson's affidavit does not establish that Mr. Turk was so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint.

    3.    Affidavit of John Turk, dated 22 November, 2005, attached to Mr. Turk's Reply (Docket #174).

In his second affidavit, Mr. Turk provides the following information:

    a.    He was beaten and assaulted while working as a security officer in 1982, and has been distrustful of strangers and reclusive since.

    b.    He has been told that he is functionally illiterate because he cannot read or write.

    c.    He has not been employed since 1990, because employment is "too demanding and stressful."

    d.    He was treated by Dr. Zorber, M.D., a psychiatrist, for mental illness but his therapy "abruptly ended" as a result of the 2002 assault.[6]

    e.    He received something with his name on it, on or about 15 October 2002.

    f.    As a result of the 2002 assault, he received 200 stitches and required "several months of convalescence."

    g.    As a result of the 2002 assault, his "mental illness" got worse.

    h.    One day he realized that he owed $10,000.00 and "was so upset and anxious that he begged his sister to call the lawyer that represented him in 1982."

    i.    He knew an appeal had been filed but because he developed a "collateral condition or disease" that caused rapid weight loss,

---

[6]Attached to the affidavit and referenced in this portion of Mr. Turk's affidavit, without explanation or argument, are two CVS pharmacy prescription forms for: (1) a 3 month prescription for Neurontin, dated 31 May 2002; and (2) a two to four month prescription for Seroquel, dated 3 November 2005. Both prescriptions were issued by Dr. Zorber for Mr. Turk; however, neither the forms nor the nature of the medication prescribed have been identified and/or explained by the pharmacy, Dr. Zorber, or even Mr. Turk.

>> tremors, and mental confusion, he could not effectively communicate with Ms. Williamson or face medical treatment. He "became depressed" and was in "a state of complete denial."
>
> j. "[H]e was just overwhelmed and couldn't cope with anything at that time."
>
> k. He used and paid for Directv services from 1997 - 2002.
>
> l. He "lawfully purchased programmers in 2000 and/or 2001 and cards that could be used for other reasons, not specifically to do something unlawful against Directv[.]"
>
> m. In 2005, he sought psychiatric treatment as a result of his father's death, which helped him "put the pieces together" and allowed him to reason "that he had good defenses against Directv[.]"
>
> n. His mental illness "caused him to lose his family[.]"

As with Mr. Turk's previous affidavit and Ms. Williamson's affidavit, this affidavit demonstrates that Mr. Turk's medical condition was aggravated by the November 2002 assault. As a result, Mr. Turk asserts his illness got worse and he stopped medical treatment. Prior to November 2002, Mr. Turk ordered, used, and paid for DIRECTV services, purchased "programmers" that allowed him to download free programs that, according to Mr. Turk, did not resemble DIRECTV's programmer cards. He also recognized and acknowledged that he received something in the mail with his name on it. These activities all demonstrate that Mr. Turk was able to function at least at a basic level and do not support a claim of incapacity. Moreover, as with the previous affidavits, many of Mr. Turk's statements are undated and do not evidence Mr. Turk's mental/physical condition during the time in question. Finally, as previously noted, the pharmacy prescription notes do not establish that Mr. Turk was even being treated for a mental condition during the time period at issue, let alone that he was mentally

11

incapacitated. Mr. Turk's second affidavit does not establish that Mr. Turk was so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint.

    4.    Documents attached to Mr. Turk's Memorandum in Opposition to DIRECTV's Motion for Leave to File Surreply. (Docket #176).

Mr. Turk attaches three documents to this memorandum, none of which are authenticated by affidavit or otherwise. Moreover, the documents are simply incorporated by reference, without argument, into Mr. Turk's memorandum.

Exhibit A is a Social Security Administration Award Certificate, dated 9 January 1986, awarding disability benefits to Mr. Turk. The document, which is only partially legible, does not state the basis for disability benefits award and does not evidence a lack of capacity in the fall of 2002.

Exhibit B is an Industrial Commission of Ohio document, entitled "Findings of Fact and Order of the Commission," dated 10 December 1991, which recognizes Mr. Turk's claim for "laceration occiput, cervical myofascitis, sprain right shoulder, contusion both elbows, post concussion syndrome." The findings state that the Commission relied upon the reports of Drs. Mathew, Zober, Lech, and Fierra in making its findings, but these reports are not attached. Mr. Turk does not attempt to demonstrate how the conditions recognized by the Industrial Commission caused him to be so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint.

Exhibit C consists of two letters to Mr. Turk's counsel from Dr. Zober. The first is dated 14 April 1986. Dr. Zober stated that during his initial meeting with Mr. Turk, he

"complained of a variety of physical and psychic difficulties," and stated that he had a hard time sleeping and that his eating habits were variable. Dr. Zober's letter stated that Mr. Turk appeared "moderately anxious," but that "cognitively his memory appeared intact" and "his judgment did not appear to be impaired." Dr. Zober also stated that "some cognitive deficit [was] exhibited in his verbal production" but noted that "it was interesting *** that non-verbal cognitive processes were normal[.]" Dr. Zober maintained that the cognitive deficits were not amenable to medication but recommended trying antidepressants because Mr. Turk's depression and anxiety might be exacerbating this problem. Dr. Zober then provided a list of medications that Mr. Turk tried, none of which were the medications on the CVS pharmacy forms, attached to Mr. Turk's second affidavit. Finally, Dr. Zober connects Mr. Turk's "emotional difficulties" to his work-sustained injuries and states that "medication and psychotherapy would be helpful." Even if the letter was authenticated, it is dated in 1986, and does not set forth a prognosis that demonstrates that Mr. Turk was so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint.

The second letter is dated 9 March 1998. Dr. Zober stated that he had been treating Mr. Turk for "post concussion syndrome" since 1985, and that he had been doing so well that he did not need treatment between August 1996, and August 1997. Dr. Zober stated, however, that Mr. Turk did come to see him on 11 August 1997, because of stress due to a family situation and that Mr. Turk exhibited signs of "depression, anxiety, and paranoid thinking[.]" Dr. Zober stated that he began to see Mr. Turk "regularly to help deal with some of this stress." Dr. Zober's letter noted that Mr. Turk's previous "difficulty with authority figures *** seemed under adequate control."

However, Dr. Zober stated, his psychiatric state was deteriorating because he was being confronted and forced to deal with case workers, other therapists, and psychological evaluators.  Dr. Zober concluded by stating that he understood "the need of the county to evaluate this matter *** and to protect the welfare of children[,] *** [but his duty was] to safeguard *** the mental health of" Mr. Turk.  Even were this letter authenticated, it once again relates to a time period that is not at issue and appears to address legal and/or custody issues related to the loss of Mr. Turk's family that he references in his second affidavit.  While the letter does note Mr. Turk's problem with authority figures, it also acknowledges his ability to develop "some trusting relationships with" his attorney and physician.  Thus, it establishes that Mr. Turk, at least in 1998, had a trusting relationship with his attorney.  The letter does not demonstrate that Mr. Turk was so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint or to engage an attorney to do so.

> 5. Affidavit of John Turk, dated 31 December 2005, attached to Mr. Turk's Motion for Leave to File Memorandum of Points and Authorities in Support of Defendant's Motion for Relief of Judgment. (Docket #179).

In his third affidavit, Mr. Turk identifies medical records from Dr. Zober that he alleges he recently received.  Mr. Turk states that the records demonstrate that "he was so troubled and confused with several thoughts at once that he couldn't care for himself much less anything legal at that time."  Mr. Turk then states, "that from on or about May 2002[,] through December 2002[,] he got worse which continued thereafter."  Mr. Turk maintains that he was "so out of it" that he missed three appointments with his psychiatrist in 2002.  Attached to Mr. Zober's affidavit are two exhibits that Mr. Turk agues support his motion.  According to Mr. Turk, "the extraordinary circumstances that

14

he experienced in 2002[,] are reflected in the excerpt of Dr. Zorber's [sic] chart and the report[.]"

Exhibit A is a singe-page document entitled, "Patient's Notes," with the name "Jerry M. Zober, M.D." typed at the top of the page.  Mr. Turk's name is handwritten in the right-hand corner. The first entry is dated 30 May 2002, and indicates that the patient stopped his "meds" for five days, which caused his anxiety to increase.  Some of the May 30th entry is illegible, but the entry contains the following the following words and phrases: "no one else can overrule him except me - he trusts my judgment," and "rapid speech."   The next entry is dated 8 July 2002, and contains an "N.S." notation, presumably indicating that Mr. Turk was a "no show" to his appointment.  The next entry is dated 15 August 2002, and states that the patient is not sleeping and missed his last appointment because he could not get up due to lack of sleep.  The entry also notes the name of what appears to be a drug to be prescribed, but it is illegible.  The next entry is dated 12 September 2002, and indicates that the sleeping pill he was given "really worked[,]" presumably referring to the medication prescribed at the 15 August 2002 appointment.  It also states that the patient is "still upset about incidents with police officer"; "complaint filed"; "hearing coming up"; and  "very anxious and worried."   The last three entries are dated, 16 October 2002, 23 October 2002, and 30 October 2002, and bear the "N.S." notation.

Exhibit B is a letter from Dr. Zober to Mr. Turk's counsel, dated 28 December 2005.  In his letter, Dr. Zober stated that Mr. Turk missed four appointments between July 2002, and December 2002, which evidences his "disturbed state of mind during the period in question."  Dr. Zober stated that during his sessions on 30 May 2002, 15

15

August 2002, and 12 September 2002, Mr. Turk "showed sleep difficulties, emotional turmoil, anxiety and thought disturbance." Dr. Zober indicated that Mr. Turk's mental capacity was diminished due to a brain injury in 1985, and that his condition is "worsened by episodic depression" as was the "case between May and September 2002." Dr. Zober then stated that Mr. Turk did not mention his legal problems during these sessions which indicates that he was not "attending to a pressing issue." Finally, Dr. Zober opined that Mr. Turk's "poor concentration, preoccupation and disordered thoughts prevented him from filing a response to the charges of Direct TV."

While Dr. Zober's opinion is the first direct evidence of Mr. Turk's ability to respond to the complaint, some of his recollections of Mr. Turk's condition are not supported by Dr. Zober's own notes. Dr. Zober's letter indicated that Mr. Turk did not discuss any legal issues during his sessions, but the notes from his 12 September 2002 session indicate otherwise. The notes indicate that Mr. Turk knew a complaint had been filed against him or that he had filed a complaint. Mr. Turk also knew he had a hearing coming up and was able verbalize these issues to his doctor. The notes do indicate that Mr. Turk was suffering from a sleep disturbance, but the condition was helped by medication, which "really worked." Moreover, missed appointments do not conclusively demonstrate that Mr. Turk lacked capacity in October 2002, to answer the complaint. Finally, according to Dr. Zober, Mr. Turk's condition was worsened between May and September 2002, prior to the time period at issue.[7] Mr. Turk's third affidavit

---

[7]The Court acknowledges that, according to Dr. Zober's notes, Mr. Turk missed three appointments in October and, thus, Dr. Zober most likely was unable to provide an opinion as to Mr. Turk's condition in October. It is Mr. Turk's burden, however, to affirmatively establish his condition between 10 October 2002 and 30 October 2002.

16

and Exhibits A and B, attached thereto, do not demonstrate that Mr. Turk was so incapacitated between 10 October 2002, and 30 October 2002, that he was unable to respond to the complaint.

Finally, none of the cases cited by Mr. Turk support his argument that the psychiatric conditions set forth above demonstrate an extraordinary circumstance justifying relief under Fed.R.Civ.P. 60(b)(6). See McCurry Ex Rel Turner v. Adventis Health Sys./Sunbelt, Inc., 298 F.3d 586 (6th Cir. 2002) (vacating a 60(b)(6) order and holding that if movant was entitled to relief it would have been pursuant to 60(b)(1) based on the excusable neglect of movant's counsel, but denying relief on this basis); Barrett v. Secretary of Health and Human Services, 840 F.2d 1259 (6th Cir. 1987) (finding irrelevant to determination of social security benefits that plaintiff was found incompetent for social security disability purposes because plaintiff engaged in gainful activity); Rader v. Cliburn, 476 F.2d 182 (6th Cir. 1973) (finding no exceptional circumstance justifying relief because the order at issue failed to take into consideration a state statute); Habib v. General Motors Corp., 15 F.3d 72 (6th Cir. 1994) (holding that plaintiff demonstrated good cause for failing to timely serve defendant because he had paralysis, severe muscle spasms, a bladder infection and had made numerous trips to the Cleveland Clinic for neurological and physical therapy); Graham v. Kyler, 2002 WL 32149019 (E.D. Pa. 2002)(tolling statute of limitations when defendant was unable to engage in abstract reasoning because of his diagnosed psychiatric disorders and "obvious functional illiteracy").

Mr. Turk has not provided clear and convincing evidence that he was so incapacitated that he could not timely respond to DIRECTV's complaint. Accordingly,

17

he has not met his burden, under Fed.R.Civ.P. 60(b)(6), to establish extraordinary circumstances that would justify relief.

## IV.  CONCLUSION

Having considered Mr. Turk's Motion for Relief from Judgment based on Fed.R.Civ.P. 60(b)(6), pursuant to the Sixth Circuit mandate, this Court denies Mr. Turk's motion.  This Court also grants DIRECTV's Motion for Leave to File a Sur-reply (Docket #175) and Mr. Turk's Motion for Leave to File a Memorandum of Points and Authorities (Docket #179), and same are deemed filed instanter.  The Court denies Mr. Turk's Motion to Strike DIRECTV's Reply to Mr. Turk's Memorandum in Opposition to DIRECTV's Motion for Leave to File Surreply (Docket #181, #182).

IT IS SO ORDERED.

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 24 March 2009